**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Michael F. Ram
Marie N. Appel
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
mram@forthepeople.com
mappel@forthepeople.com

*Additional Counsel listed on signature page*

### UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUG SPINDLER and MAKESHA SATTERWHITE, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMAND<br><br>Complaint Filed: |

Plaintiffs Doug Spindler ("Spindler") and Makesha Satterwhite ("Satterwhite") (together "Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following based upon information and belief, the investigation of counsel, and personal knowledge as to the factual allegations pertaining to themselves.

### I.    INTRODUCTION

1.    Defendant General Motors LLC ("GM" or "Defendant") designed, manufactured, marketed, distributed, sold, warranted, and serviced hundreds of thousands of 2016 through 2019 Chevrolet Malibu, 2016 through 2019 Chevrolet Volt, 2018 through 2019 Chevrolet Traverse, and 2019 Chevrolet Blazer vehicles (the "Class Vehicles") from approximately mid-2015 to the present.

2.     The Class Vehicles contain a defect in which the vehicles fail to detect that the driver has placed the car in "Park" and thus prevents the vehicle driver from shutting off and locking the vehicle. Instead, the Class Vehicles display a "Shift to Park" error message on the instrument cluster even though the gear shift is already in "Park" (hereinafter the "Shifter Defect").

3.     As a result of the Shifter Defect, Plaintiffs and members of the Class ("Class Members") are unable to shut off their vehicles and, to avoid battery discharge, are forced to resort to try to trick their vehicles to detect that the shift lever is in fact in "Park." The Shifter Defect prevents the vehicle from shifting into gear, leaving the driver stranded. The drive must then have the vehicle towed for repair.

4.     GM had knowledge of the defect, issuing the first in a series of service bulletins ("Bulletins") on January 9, 2017, alerting its Chevrolet dealerships of the Shifter Defect.

5.     Yet despite these notices, GM, through its Chevrolet dealerships, refuses to acknowledge the Shifter Defect. When customers press the issue, GM, through its Chevrolet dealerships, refuses to honor its contractual promises to fix the defect, forcing owners and lessees of the Class Vehicles to pay for the repairs at their own expense or forgo servicing the issue.

6.     Plaintiffs have given GM reasonable opportunities to honor its contractual obligations and cure the Shifter Defect, but GM has refused to and/or is unable to do so within a reasonable period of time.

7.     GM's conduct is a breach of contract, a breach of its express and implied warranties, and a breach of the Magnuson-Moss Warranty Act, 15 U.S.C. section 2301 *et seq.* (the "MMWA"). GM's conduct is also in violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.* ("CLRA"), the Unfair Competition Law, Cal Bus. And Prof. Code §§17200, *et seq.* ("UCL"), and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code

CLASS ACTION COMPLAINT

§§1791 *et seq.*

8.      GM has and will continue to benefit from its unlawful conduct—by selling and leasing more Class Vehicles and avoiding its contract and warranty obligations—while consumers are harmed at the point of sale because their vehicles suffer from the Shifter Defect. Had Plaintiffs and other proposed Class Members known that the defect existed at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them.

9.      To remedy GM's unlawful conduct, Plaintiffs, on behalf of the proposed Class, seek damages and restitution from GM, as well as notification to all Class Members about the defect with the Class Vehicles' shifters.

## II.    PARTIES

10.     Plaintiff Doug Spindler is, and at all times mentioned herein was, an adult individual residing in Orinda, California. Spindler is a citizen of California.

11.     Plaintiff Makesha Satterwhite is, and at all times mentioned herein was, an adult individual residing in Victorville, California. Satterwhite is a citizen of California.

12.     Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan. General Motors LLC's sole member is General Motors Holdings LLC, a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC's sole member is General Motors Company, a Delaware corporation with its principal place of business in Michigan. Thus, Defendant General Motors LLC is a citizen of both Delaware and Michigan.

13.     At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, warranting, selling, and leasing Class Vehicles and their component parts throughout the United States, including in

CLASS ACTION COMPLAINT

California.

### III.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this action under 28 U.S.C. section 1332(d) of the Class Action Fairness Act of 2005 because: (1) there are 100 or more Class Members, (2) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (3) there is minimal diversity because Plaintiffs are citizens of a state different from that of GM. This Court also has subject matter jurisdiction over this action under 28 U.S.C. section 1331 because Plaintiffs present a claim under the federal Magnuson-Moss Warranty Act, 15 U.S.C. section 2301, *et seq*. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. section 1367 because all the claims are derived from a common nucleus of operative facts and are such that Plaintiffs would ordinarily be expected to try them in one judicial proceeding.

15.    GM, through its business of distributing, selling, and leasing of the Class Vehicles, has established sufficient contacts in this judicial district such that personal jurisdiction is appropriate. Defendant is deemed to reside in this judicial district pursuant to 28 U.S.C. section 1391(a).

16.    Venue is proper under 18 U.S.C. section 1965(a) and (b) because Plaintiffs reside in this district, because GM transacts affairs in this judicial district, and the ends of justice require it. Venue is also proper in this judicial district under 28 U.S.C. section 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

### IV.    FACTUAL ALLEGATIONS

17.    From approximately 2015 to 2019, GM designed, manufactured, marketed, distributed, sold, warranted, and serviced the 2016 through 2019 Chevrolet Malibu, 2016 through

CLASS ACTION COMPLAINT

2019 Chevrolet Volt, 2018 through 2019 Chevrolet Traverse, and 2019 Chevrolet Blazer vehicles (the "Class Vehicles"). In those years to the present, GM has continued to sell these Class Vehicles to the public.

18.     All Class Vehicles suffer from a defect with their transmission shifter which intermittently causes the Class Vehicles to not enter park mode, displays a "Shift to Park" message on the instrument cluster, and prevents the vehicle driver from shutting off and locking the vehicle, even though the vehicle's shift lever is in the "Park" position.



19.     The Shifter Defect substantially impacts the value, safety, and use of the Class Vehicles to Plaintiffs and members of the Class, as they are unable to shut off their vehicles, are unable to lock their vehicles, and, to avoid battery discharge and to shut the vehicle off, are forced to resort to all sorts of gimmicks to get their vehicles to detect that the shift lever is in fact in "Park."

20.     Indeed, Plaintiffs have repeatedly found themselves stuck inside their vehicles at

CLASS ACTION COMPLAINT

home, running errands, and at various other places away from home, unable to shut off their vehicle.

21.    To get their vehicles to detect that the shifter is in fact in "Park," Plaintiffs were forced to repeatedly wiggle the shifter, shift it through its gears, and start and shut off the engine.

22.    Plaintiffs' experiences are not unique; numerous other consumers have complained about the same issue: [1]

- 2016 Chevrolet Malibu: "When I put the car in park its not like its registering to the car its parked. The engine turns off but all other system is still on . My radio and lights will not turn off. Its a pain cause you have to keep messing with it until it accepts that the car is in park. This is was brand new car when bought it in 2016, having problems with it now not cool ." (posted on May 17, 2019 by a driver from Yulee, US) (available at https://www.carcomplaints.com/Chevrolet/Malibu/2016/transmission/shift_to_park_message.shtml) (last visited May 1, 2021);

- 2016 Chevrolet Malibu: "Getting a "SHIFT TO PARK" warning message even though car is actually in park. Dealership states this is a known issue across multiple GM models but GM refuses to accept responsibility. Repair will cost $750.00 dollars and is not covered under an extended powertrain warranty. GM says this is an electronic part and is not part of the powertrain. How can the gear shifter not be considered as a part of the powertrain electronically controlled or not? This is nothing but a convenient excuse to hide a known problem and to avoid paying for your own mistake and you know it GM. It will be back to Toyota after this crap... GUARANTEED !!!" (posted on June 24, 2019 by a driver from Lyman, SC) (available at https://www.carcomplaints.com/Chevrolet/Malibu/2016/transmission/shift_to_park_message.shtml) (last visited May 1, 2021);

- 2017 Chevrolet Malibu: "The problem starting happening about a week ago. At first, it just happened once that day, and then not again for a couple days. Then once a day after that, and now it happens every single time I turn the car off. At first, I was able to just give the shifter a little extra push, and it recognized it was in Park. Now, it takes a lot of messing with it, turning it back on and off and such, to finally get it to recognize it is in Park. The strange thing is that the car already knows it is in park; letting off that gas doesn't make me roll forward or backward, and the display under the speedometer shows I am very clearly in Park. I have an appointment at the local Chevy dealer next week to see if this can be fixed. When I described the problem, the guy on the phone acted like he was very familiar with the issue." (posted on

---

[1] Sic throughout.

CLASS ACTION COMPLAINT

1
2

December 18, 2018 by a driver from Bryan, US) (available at https://www.carcomplaints.com/Chevrolet/Malibu/2017/transmission/shift_to_park_alert.shtml) (last visited May 1, 2021));

3
4
5
6
7
8
9
10
11

- 2017 Chevrolet Malibu: "My car is a 2017 standard malibu and for 4 days this has been happening to my car and chevy dealership is always where i go for all my services on my car when i called dealership they say they never heard of this and wants to charge me to just look at it. This is unacceptable for my year of car and mileage. this should be under warranty. i try keep going in and out of park and different gears and still it gives me those messages and then if you ignore it, the car will beep and alert you until you keep playing with switching out gears and finally it works and stops after playing with ears for 15 minutes and looking stupid , but each time i drive it does this. something is obviously wrong and GM/Chevy should take care of this under warranty. im not paying for a defect in car which should be under warranty still" (posted on October 26, 2018 by a driver from Boynton Beach, FL) (available at https://www.carcomplaints.com/Chevrolet/Malibu/2017/transmission/shift_to_park_alert.shtml) (last visited May 1, 2021).

12
13
14
15
16
17

- 2018 Chevrolet Malibu: "Once my car is stopped and I shift to �P�(park) and I try to turn off my vehicle it still gives me the 'shift to park� message. The shift gear has previously been replaced by the car dealership. However and unfortunately, it started to do it again. It has under 36,000 miles on it and we thought the issue had been fixed already but it started to do it again less then a year later." (posted on May 28, 2020 by a driver from Tolleson, AZ) (available at https://www.carcomplaints.com/Chevrolet/Malibu/2018/engine/engine.shtml) (last visited May 1, 2021);

18
19
20
21
22
23
24
25

- 2018 Chevrolet Malibu: "As I was exiting the freeway and stoped on the off ramp, I tried to step on the gas pedal to go but my car did not want to go. My steering wheel was locked, my bluetooth cut off, and the check engine light went on. I turned on my hazard lights and put my car in park. I tried to shut it off but it didn't shut off right away. I pushed the off button a few times before it finally shut off. When I turned it back on, I drove to the nearest parking lot and put it in park. Only this time, the message "shift to park" popped up. My vehicle was already shifted to park but the system obviously couldn't comprehend. My car only has 61,845 miles!! it should not be having these issues so soon!!" (posted on March 9, 2020 by a driver from Hesperia, CA) (available at https://www.carcomplaints.com/Chevrolet/Malibu/2018/engine/engine.shtml) (last visited May 1, 2021);

26
27

- 2016 Chevrolet Volt: "Unable to turn off power to car with error on dashboard saying shift to park. Have to power on and off several times while moving the shifter in and out of park to get the car to turn off." (posted on December 16, 2019 by a driver from Kent, WA) (available at

CLASS ACTION COMPLAINT

https://www.carcomplaints.com/Chevrolet/Volt/2016/engine/engine.shtml) (last visited on May 1, 2021).

- 2016 Chevrolet Volt: "When attempting to turn off the car it says "action required: Shift to park" and will proceed as being left on, despite being in park. This occurs about 70% of the time the car is driven and takes several tries of turning on the car, moving, parking, and turning back off before the engine shuts off without this warning." (posted on June 16, 2020 by a driver from St. Louis, MO (available at https://www.carcomplaints.com/Chevrolet/Volt/2016/engine/engine.shtml) (last visited May 1, 2021);

- 2017 Chevrolet Volt: "Shift to park problems. On occasion, the vehicle will not go into park when the shifter is in park. I get an error message to park. I have to either start the car, shift into drive, then back to park, or I shake the shifter until it acknowledges the park." (posted on July 13, 2020 by a driver from Thornton, CO (available at https://www.carcomplaints.com/Chevrolet/Volt/2017/drivetrain/power_train. shtml) (last visited May 1, 2021);

- 2017 Chevrolet Volt: The 2017 Volt, when put into park, does not detect it's in park and gives a "shift to park" message. The car will not turn off. I cannot leave the car. I am stuck rolling the car forward and back multiple times until it finally registers it's in park and turns off. This happens intermittently and unpredictably. I read online that this is a known and widespread issue in the 2017 Volt that GM is refusing to address. They are also refusing to cover it under the powertrain warranty, even though shifting is part of the propulsion system. I have missed meetings because I have been unable to leave my car. I fear being stranded with a car that won't turn off. This has been happening regularly but unpredictably for all of summer 2020." (posted on June 5, 2020 by a driver West Saint Paul, MN) (available at https://www.carcomplaints.com/Chevrolet/Volt/2017/drivetrain/power_train. shtml) (last visited May 1, 2021);

- 2018 Chevrolet Volt: "Shift to park. Vehicle does not turn off after shifting to park. The car does not detect park mode and driver has to �jiggle� shift knob." (posted on August 4, 2020 by a driver Chula Vista, CA) (available at https://www.carcomplaints.com/Chevrolet/Volt/2018/miscellaneous/unknow n_or_other.shtml) (last visited May 1, 2021);

- 2018 Chevrolet Volt: "Over the last month (starting around July 6 but continuing today), when I shift my car to park and attempt to turn it off, my Volt displays the message "shift to park" and will not fully turn off. This results in me not being able to lock my car and the lights stay on. The message appears randomly about 50-75% of my attempts to turn off the car. The car is always stationary of course and in park. To fix it, I will depress the shifter button a few times...or hit the ignition button again, shift to drive, and back to

park. I may have to do these several times to eventually get it to stop displaying that message and fully turn off. I've heard that over time, those fixes won't work and the car just will not shut down properly. Online, I see that many people have this issue with gen 2 Volts. Even when they get the shifter assembly replaced by Chevy, after some time, the issue comes back again. Could this shifter assembly be recalled since it is such a known issue and continues to cause problems? thank you!" (posted on July 6, 2020 by a driver from Los Angeles, CA) (available at https://www.carcomplaints.com/Chevrolet/Volt/2018/miscellaneous/unknown_or_other.shtml) (last visited May 1, 2021);

- 2019 Chevrolet Volt: "I was driving home at around 45mph on Sunday night when the car suddenly stalled. I was on the last 6 EV miles and had a full tank of gas, driving on EV L mode. Luckily I was on a quiet street at night and was able to pull over to the side. The car gave me the shift to park message. Then I got the messages "initializing wait to shift", "propulsion power reduced to 0". The car would not work, wouldn't shift out of park. Changing to hold mode to use the gas didn't make it work either." (posted on December 25, 2018) (available at https://www.gm-volt.com/threads/2019-volt-suddenly-stalled-had-to-be-towed.328371/) (last visited May 1, 2021);

- 2018 Chevrolet Traverse: "When gear is already in PARK, I get a message says put in PARK to shut off. Called a dealership and told it will cost to look at even though still under 100% warranty. This is a brand new vehicle so unsure why this problem would already be occurring. It's annoying because at times you have to start it multiple times, just to be able to shut off fully." (posted on November 26, 2018 by a driver from Cincinnati, OH) (available at https://www.carcomplaints.com/Chevrolet/Traverse/2018/transmission/shift_to_park_message.shtml) (last visited May 1, 2021);

    2018 Chevrolet Traverse: "So when you spend this kind of money on a vehicle you expect it to hold up for several years. This car is barely a year old and for the last month I have been dealing with my SUV not recognizing when it is in park. What that means is, the vehicle will not shut off and I can not lock it and walk away. I have to sit and jiggle the gear shifter like a mad woman until it decides to recognize that it is indeed in park. I think it must be a transmission problem because sometimes when I put it in Reverse it acts as if it is in neutral. Appointment with Chevy scheduled. Will update soon." (posted on July 1, 2019 by a driver from La Place, US) (available at https://www.carcomplaints.com/Chevrolet/Traverse/2018/transmission/shift_to_park_message.shtml) (last visited May 1, 2021);

- 2019 Chevrolet Blazer: "I believe there was actually a service bulletin for that very issue! My 2019 RS was actually jamming itself into the parking brake mode while I was driving! I would then get the shift to park notice on my screen. It was in the dealer for a few days and they said there was a service bulletin for the issue." (posted on April 2021) (available at

CLASS ACTION COMPLAINT

https://www.chevyblazer.org/threads/shift-to-park-but-already-in-park.2087/) (last visited May 1, 2021).

23.    The Shifter Defect is inherent in all Class Vehicles, and the Shifter Defect is the same for all Class Vehicles.

24.    Federal law requires automakers like GM to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* 49 U.S.C. §§ 30101–30170 (Transportation Recall Enhancement, Accountability, and Documentation Act, "TREAD Act").

25.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including those which are safety-related. *Id.* §§ 30166, 30167. Thus, GM knew or should have known of the many complaints about the Shifter Defect logged by NHTSA's Office of Defects Investigation. The content, consistency, and disproportionate number of those complaints alerted, or should have alerted, GM to the Shifter Defect.

26.    Many consumer complaints made to NHTSA, a sample of which is listed below,[2] also state that the dealership was made aware of the problems caused by the Shifter Defect:

**2016 Chevrolet Malibu**

- MY MALIBU ALL OF SUDDEN STARTED SENDING A MESSAGE WHEN I GO TO TURN THE CAR OFF THAT MY CAR NEEDS TO SHIFT TO PARK. I HAVE THE CAR IN PARK, BUT IT IS NOT REGISTERING IT IS IN PARK. IT DOESN'T HAPPEN ALL THE

---

[2] Sic throughout.

CLASS ACTION COMPLAINT

TIME, IT HAPPENS 90% OF THE TIME WHEN I GO TO TURN THE CAR OFF. (posted on July 11, 2018) (available at https://www.nhtsa.gov/vehicle/2016/CHEVROLET/MALIBU%2525 0LIMITED/4%252520DR/FWD) (last visited June 28, 2021).

- WHEN PLACING MY VEHICLE INTO THE PARK POSITION AND TRYING TO TURN MY ENGINE OFF A MESSAGE STATES TO PUT THE VEHICLE INTO THE PARK POSITION BEFORE THE ENGINE WILL SHUT OFF. THE CAR STAYS ON UNTIL IT GOES OFF BY DEFAULT WHICH CAUSES A DRAW ON THE BATTERY. THIS ISSUE HAS BEEN HAPPENING CONSISTENTLY FOR THE PAST TWO YEARS AND WHEN I TAKE IT TO THE DEALERSHIP I AM TOLD THAT THEY CANNOT DUPLICATE THE ISSUE. (posted on December 4, 2020) (available at https://www.nhtsa.gov/vehicle/2016/CHEVROLET/MALIBU%2525 0LIMITED/4%252520DR/FWD) (last visited June 28, 2021).

- TL* THE CONTACT OWNS A 2016 CHEVROLET MALIBU. THE CONTACT STATED HE WAS PARKING THE VEHICLE AND THE WARNING LIGHT ILLUMINATED WITH A MESSAGE TO SHIFT TO PARK. THE CONTACT THEN SHIFTED THE VEHICLE BACK INTO DRIVE AND BACK INTO PARK YET THE ERROR MESSAGE STATED SHIFT TO PARK. THE CONTACT STATED HE TRIED TO TURN THE VEHICLE OFF AND THE ENGINE SHUT-OFF HOWEVER, THE HEADLIGHTS, INTERIOR LIGHTS, AND THE RADIO REMAINED ON. THE CONTACT STATED THE FAILURE WAS INTERMITTENT. THE VEHICLE WAS TAKEN TO MIDWAY CHEVROLET (2323 W BELL RD, PHOENIX, AZ 85023) WHERE THE DIAGNOSIS WAS THE PARK FAILURE MECHANISM. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE BUT OFFERED NO ASSISTANCE. THE FAILURE MILEAGE WAS 93,863. (posted on March 4, 2021) (available at https://www.nhtsa.gov/vehicle/2016/CHEVROLET/MALIBU%2525 0LIMITED/4%252520DR/FWD) (last visited June 28, 2021).

- VEHICLE IS PLACED INTO THE PARK POSITION WHILE FOOT IS ON THE BRAKE. ONCE DASH SHOWS THAT IT IS IN PARK, FOOT IS RELEASED FROM THE BRAKE AND ENGINE IS SHUTOFF. AT THIS TIME A MESSAGE DISPLAYS ON THE DASH CONSOLE "ACTION REQUIRED: SHIFT TO PARK". THIS OCCURS THE MOST OFTEN ON AN INCLINE UPON WHICH THE MESSAGE "SWITCH TO PARK" LEADS TO CONCERN OF THE ROLLING BACK OF THE VEHICLE. WHILE THE MESSAGE IS DISPLAYED YOU ARE UNABLE TO TURN THE CAR OFF WHICH WILL EVENTUALLY LEAD TO THE BATTERY BEING DRAINED. THE ONLY RESOLUTION THAT I AM AWARE OF

CLASS ACTION COMPLAINT

OTHER THAN GOING TO THE DEALER IS TO START THE CAR BACK UP (ENGINE WEAR, ADDITIONAL C02 EMISSIONS) AND ATTEMPT TO PLACE IT IN PARK AGAIN WITH THE HOPE THE MESSAGE WILL DISPLAY. IN PERFORMING RESEARCH THIS ISSUE IS DUE TO A POORLY MANUFACTURED MICROSWITCH WITHIN THE SHIFTER ASSEMBLY, THE PERMANENT FIX IS TO HAVE THE DEALER REPLACE THE ENTIRE SHIFT ASSEMBLY. (posted on March 8, 2021) (available at https://www.nhtsa.gov/vehicle/2016/CHEVROLET/MALIBU%25252 0LIMITED/4%252520DR/FWD) (last visited June 28, 2021).

- My vehicle, a 2016 Chevy Malibu, has started receiving the *known* GM "Shift to Park" error message. This error message occurs when the vehicle is in park, but the driver information center (in the dashboard) alerts to "Shift to Park" before you can shut off the vehicle. If you try to exit the vehicle with the error message, all electronic systems (screen, lights, dash, etc) will stay on, draining down the car battery, putting me at risk of being stranded due to a known issue in my car and/or me having to leave my car running, putting my car at risk of being broken into, stolen, or worse. I have wasted countless hours already, in the very short time the error has occurred, having to shift out of park, reverse, drive, back into park, and keep trying over and over and over and over and over and over, until it finally might register. One evening, it took over two hours for this to work. This is a HUGE risk to me, especially in the city I live in, as a single woman. Furthermore, the fact that GM and NHTSA have a service bulletin on this, and it is a *known* issue in my year, make, and model, on top of the thousands and thousands of online forums reporting this same issue, tells me that this is much, much larger than anyone (especially GM) would like to admit, and that my car needs to be included in the recall for this. (posted on June 3, 2021) (available at https://www.nhtsa.gov/vehicle/2016/CHEVROLET/MALIBU%25252 0LIMITED/4%252520DR/FWD) (last visited June 28, 2021).

**2017 Chevrolet Malibu**

- WHEN SHIFTING INTO PARK, THE SHIFTER DOES NOT FULLY ENGAGE RESULTING IN THE INABILITY TO PARK THE CAR OR TURN IT OFF. THE MESSAGE ON THE DASH SAYS "SHIFT INTO PARK" EVEN THOUGH THE SHIFTER IS ACTUALLY IN PARK. THIS HAPPENS EVERYTIME THE DRIVER TRIES TO PARK THE VEHICLE. (posted on November 11, 2018) (available at https://www.nhtsa.gov/vehicle/2017/CHEVROLET/MALIBU/4%2525 20DR/FWD#complaints) (last visited June 28, 2021).

- TL* THE CONTACT OWNS A 2017 CHEVROLET MALIBU. THE CONTACT STATED THAT AFTER THE VEHICLE WAS SHIFTED

CLASS ACTION COMPLAINT

INTO PARK, THE VEHICLE FAILED TO TURNOFF. THE INSTRUMENT PANEL INDICATED THAT THE VEHICLE WAS ON. THE VEHICLE STAYED ON UNTIL EITHER THE BATTERY WAS DRAINED OR THE ELECTRICAL WIRING OVERHEATED. THE VEHICLE WAS TAKEN TO THE DEALER MIKE SAVOIE CHEVROLET (1900 W MAPLE RD, TROY, MI 48084, (248) 566-6523) AND DIAGNOSED AND REPLACED THE GEAR SHIFTER. THE CONTACT PAID FOR THE REPAIRS OUT OF POCKET. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND PROVIDED THE CONTACT WITH A CASE NUMBER. THE APPROXIMATE FAILURE MILEAGE WAS 60,000.*DT*JB (posted on August 19, 2020) (available at https://www.nhtsa.gov/vehicle/2017/CHEVROLET/MALIBU/4%2525 20DR/FWD#complaints) (last visited June 28, 2021).

- PUTTING THE CAR INTO PARK THE IGNITION WILL NOT SHUT OFF WITH THE MESSAGE NOT IN PARK. 10 MONTHS AGO HAD DEALER FIX. NEW HARNESS FROM TRANS TO SHIFTER. NOW PROBLEM BACK AGAIN IGNITION STAYS ON EVEN WHEN SHIFTER IS IN PARK SAFETY ISSUE IF CAR WILL NOT COMPLETELY SHUT OFF (posted on March 16, 2021) (available at https://www.nhtsa.gov/vehicle/2017/CHEVROLET/MALIBU/4%2525 20DR/FWD#complaints) (last visited June 28, 2021).

**2018 Chevrolet Malibu**

- TL* THE CONTACT OWNS A 2018 CHEVROLET MALIBU. AFTER THE CONTACT SHIFTED THE VEHICLE INTO PARK, THE SHIFT TO PARK WARNING INDICATOR ILLUMINATED AND THE VEHICLE WAS UNABLE TO BE LOCKED. THE DEALER AND MANUFACTURER WERE NOT NOTIFIED OF THE FAILURE. THE CONTACT STATED THAT SHE NEVER EXPERIENCED THE FAILURE IN THE PAST. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS 28,844. (posted on September 30, 2019) (available at https://www.nhtsa.gov/vehicle/2018/CHEVROLET/MALIBU/4%2525 20DR/FWD#complaints) (last visited June 28, 2021).

- WHEN PUTTING MY CAR IN PARK TO TURN OFF, THE CAR DOESN'T RECOGNIZE IT'S IN PARK AND THUS WON'T TURN OFF. AS SUCH, I CANNOT LEAVE THE VEHICLE. (posted on November 12, 2020) (available at https://www.nhtsa.gov/vehicle/2018/CHEVROLET/MALIBU/4%2525 20DR/FWD#complaints) (last visited June 28, 2021).

- WHEN I PUT CAR IN PARK A MESSAGE COMES UP ON THE DASH TO SHIFT TO PARK EVEN THOU CAR IS ALREADY IN

CLASS ACTION COMPLAINT

PARK. CAR HAS 100K WARRANTY BUT DEALER SAYS THIS SAFETY SWITCH NOT COVERED OR RECALLED. READING ONLINE THIS SEEMS TO BE A COMMON PROBLEM. SHOULD BE RECALLED. (posted on April 27, 2021) (available at https://www.nhtsa.gov/vehicle/2018/CHEVROLET/MALIBU/4%2525 20DR/FWD#complaints) (last visited June 28, 2021).

**2019 Chevrolet Malibu**

- AFTER CAR IS TURNED OFF AND IN PARK, THE DASH LIGHT STATES TO "PUT IN PARK" EVEN THOUGH THE CAR IS IN PARK, THE LIGHT WON'T GO AWAY UNTIL THE SHIFTER IS WIGGLED BACK AND FORTH, AND SIDEWAYS WAY TOO MANY TIMES, I AM AFRAID THE BATTERY WILL RUN DOWN IF LEFT LIKE THAT, WITH THE LIGHT STILL BEING ON. (posted on September 26, 2020) (available at https://www.nhtsa.gov/vehicle/2019/CHEVROLET/MALIBU/4%2525 20DR/FWD#complaints) (last visited June 28, 2021).

**2016 Chevrolet Volt**

- WHEN VEHICLE IS SHIFTED INTO PARK POSITION AND ENGINE IN POWERED OFF, THE DASH READS OUT THAT VEHICLE MUST BE IN PARK POSITION. I HAVE TO JIGGLE THE SHIFTER OR DEPRESS THE BUTTON SEVERAL TIMES TO ENGAGE INTO PARK POSITION. IF THIS IS IGNORED THE VEHICLE DOES NOT REGISTER IN PARK AND CANNOT SAFELY BE LEFT UNATTENDED. THIS OCCURRENCE HAS BEEN HAPPENING FOR OVER A MONTH AT A DAILY RATE. THE DEALERSHIP DOES NOT HONOR THE POWER TRAIN WARRANTY FOR THIS ISSUE. (posted on October 23, 2018) (available at https://www.nhtsa.gov/vehicle/2016/CHEVROLET/VOLT/4%252520 DR/FWD#complaints) (last visited June 28, 2021).

- SENSOR DOES NOT RECOGNIZE WHEN CAR IS IN PARK. CONTINUES TO RUN AND WILL NOT TURN OFF WHEN IN PARK. ERROR MESSAGE DISPLAYED IS "SHIFT TO PARK" EVEN WHEN IN PARK. THIS IS A SAFETY ISSUE BECAUSE CAR WILL NOT DISENGAGE OR TURN OFF. THIS OCCURS FREQUENTLY. (posted on October 18, 2019) (available at https://www.nhtsa.gov/vehicle/2016/CHEVROLET/VOLT/4%252520 DR/FWD#complaints) (last visited June 28, 2021).

- GET "SHIFT TO PARK" ERROR WHEN TRYING TO SHUT OFF IGNITION. SHIFT LEVER IS IN PARK BUT NOT RECOGNIZED BY CARS ELECTRONICS OR SWITCHES OR? THIS PREVENTS

CLASS ACTION COMPLAINT

CAR FROM BEING SHUT OFF -THIS IS MORE THAN JUST AN IRRITANT. WHEN YOU ARE STOPPED SOMEWHERE AND CAN'T TURN OFF YOUR IGNITION, YOU ARE IN A REALLY SERIOUS PREDICAMENT! GM HAS HAD THIS PROBLEM ON MANY ELECTRONIC HYBRIDS SINCE 2016 MODELS AND WILL NOT OR CANNOT FIX! ONE GOOGLE OF CHEVY VOLT "SHIFT TO PARK" WILL SHOW HUNDREDS OF COMPLAINTS (MANY TO YOUR DEPT.) AND NO HELP IN FORCING GM TO RESOVE PROBLEM ! (posted on May 6, 2021) (available at https://www.nhtsa.gov/vehicle/2016/CHEVROLET/VOLT/4%252520 DR/FWD#complaints) (last visited June 28, 2021).

**2017 Chevrolet Volt**

- THE CAR LITERALLY JUST STOPPED WORKING AS I WAS TURNING ON A BUSY ROAD, SO I WAS STUCK RIGHT IN THE MIDDLE OF THE ROAD WITH CARS NEARLY SMASHING INTO THE BACK OF ME. THE STEERING WHEEL LOCKED UP. THE ACCELERATOR STOPPED WORKING. I COULDN'T TURN IT OFF OR ON- IT WAS KIND ON JUST STUCK IN AN ALTERNATE MODE. THERE WAS AN ORANGE ENGINE SYMBOL THAT WAS LIT UP AND IT KEPT SAYING "SHIFT TO PARK" BUT I WOULD SHIFT AND NOTHING WOULD HAPPEN. I COULDN'T PUT IT IN NEUTRAL SO I COULD PUSH IT TO A SAFER LOCATION. NOTHING. THE TECHNICIAN ON THE PHONE DIDN'T KNOW WHAT WAS WRONG WITH IT, BUT SOMEONE WHO STOPPED TO HELP SAID HE USED TO WORK ON THESE CARS AND SAID IT HAPPENS QUITE OFTEN AND IT THERE WAS ABSOLUTELY NOTHING I COULD HAVE DONE TO FIX IT (I THOUGHT I REMEMBER HIM SAYING SOMETHING ABOUT AN ENGINE SWITCH PROBLEM, BUT I WAS SO FRAZZLED I WASN'T REALLY LISTENING TO HIM) . IF THIS HAD HAPPENED ON A HIGHWAY I COULD HAVE BEEN KILLED. I DON'T KNOW HOW THESE CARS HAVE NO BEEN RECALLED. (posted on July 2, 2017) (available at https://www.nhtsa.gov/vehicle/2017/CHEVROLET/VOLT/5%252520 HB/FWD#complaints) (last visited June 28, 2021).

- When turning the car off a "shift to park" message appeared. The car wouldn't automatically lock because it thought it was still in drive. When I returned I tried to turn the car on while still in park, I shifted back to Drive and then back to park and the same message appeared when I tried to turn it on as if it still hadn't turned off. No AC, steering or the startup sound so I tried to wiggle it and then took my foot off the brake and then turned off, I then opened the door to cut power. I put my foot on the brake and the car started normally but this is the 4th time in less than a week. Heat outside at this time of year is 115 degrees+ so being stranded

for a neutral safety switch or transmission gear sensor is unacceptable especially when my Wife and daughter primarily use it. We had this problem over a year ago and they replaced the whole gear selector assembly but it is showing signs of failure again. (posted on June 20, 2021)                    (available                    at https://www.nhtsa.gov/vehicle/2017/CHEVROLET/VOLT/5%252520 HB/FWD#complaints) (last visited June 28, 2021).

- Shifter is defective so that the car won't turn off, instead sticks on with "Shift to Park" warning. This makes it not possible to lock the car using the buttons, and drains the battery, resulting in stranded driver. Dealership said that they had never heard of it, but I see on the internet that is very, very, very, very, very common problem. Started after about 5,000 miles, has done is sporadically for last 4 years. Getting worse so that rarely turns off now, we just leave it on a charger all the time now. (posted        on        June        23,        2021)        (available        at https://www.nhtsa.gov/vehicle/2017/CHEVROLET/VOLT/5%252520 HB/FWD#complaints) (last visited June 28, 2021).

**2018 Chevrolet Volt**

- WHEN ATTEMPTING TO POWER OFF VEHICLE AFTER SHIFTING TO PARK, AN ERROR MESSAGE IS DISPLAYED ON CONSOLE, "SHIFT TO PARK", AND THE VEHICLE WILL NOT POWER OFF. VEHICLE IS IN PARK WHEN THE ISSUE OCCURS, BUT REQUIRES SHIFTING OUT OF PARK, POSSIBLY MULTIPLE TIMES, TO ALLOW VEHICLE TO POWER OFF. ISSUE OCCURS DURING EACH USE OF VEHICLE. (posted on January 16, 2020)                    (available                    at https://www.nhtsa.gov/vehicle/2018/CHEVROLET/VOLT/5%252520 HB/FWD#complaints) (last visited June 28, 2021).

- WHEN FULLY STOPPED AND IN PARK, TURNING CAR OFF, MESSAGE APPEARS 'SHIFT TO PARK' CAR IS ALREADY IN PARK. UPON PUSHING START TO TURN CAR OFF, MOST LIGHTS ETC. TURN OFF EXCEPT THE SPEEDO DISPLAY. NO WAY TO TURN IT OFF. CAR HORN HONKS UPON EXITING CAR WITH KEYS. SPEEDO LIGHTS STAY ON, DRAINING BATTERY AND POSSIBLY TEMPTING A CAR THIEF. (posted on April 24, 2021)                    (available                    at https://www.nhtsa.gov/vehicle/2018/CHEVROLET/VOLT/5%252520 HB/FWD#complaints) (last visited June 28, 2021).

**2019 Chevrolet Volt**

- HAD SHIFT TO PARK APPEAR AND CAR WOULD NOT SHUT OFF. IF YOU PLAY WITH IT MIGHT SHUT OFF BUT WILL NOT

CLASS ACTION COMPLAINT

ALLOW IT TO RESTART. GM IS AWARE OF THIS AND HAS PUT MULTIPLE TSB'S OUT TO FIX IT AND NOW THEY HAVE A NEW ONE. IT AFFECTS ALL GEN 2 VOLTS AND OTHER MODELS. IT CAN STRAND YOU IF IT HAPPENS. THIS SHOULD BE A RECALL NO ONE WANTS TO BE STRANDED IN THE DARK ANYWHERE. (posted on December 17, 2020) (available at https://www.nhtsa.gov/vehicle/2019/CHEVROLET/VOLT/5%252520 HB/FWD#complaints) (last visited June 28, 2021).

- 'SHIFT TO PARK' ISSUE. AFTER POWERING OFF CAR I GET AN ALERT ON DASHBOARD THAT LOOKS LIKE THIS 'SEE IMAGE'. THIS HAPPENS EVEN THOUGH THE VEHICLE IS SET TO PARK. VEHICLE WILL NOT TURN OFF UNTIL JIGGLING THE SHIFT HANDLE OR TURNING ON CAR AND RE SETTING SHIFT HANDLE TO PARK. RECURRING ISSUE. (posted on April 21, 2021) (available at https://www.nhtsa.gov/vehicle/2019/CHEVROLET/VOLT/5%252520 HB/FWD#complaints) (last visited June 28, 2021).

**2018 Chevrolet Traverse**

- ISSUE 1 WHEN YOU STOP DRIVING THE TRAVERSE, PLACE IT IN PARK AND HIT THE BUTTON TO TURN OFF THE ENGINE, IT WILL SHUT OFF THE ENGINE BUT NOT THE ELECTRONICS. THE CAR DISPLAYS 'ACTION REQUIRED SHIFT TO PARK' EVEN THOUGH THE SHIFTER IS IN PARK WITH THE RED P LIT UP. YOU CANNOT TURN OFF THE VEHICLE UNTIL YOU REPEATEDLY START THE VEHICLE, PLACE IT IN DRIVE THEN BACK TO PARK. EVENTUALLY IT WILL WORK CORRECTLY. IT ALSO SEEMS TO CLEAR IF I SHIFT ALL THE WAY DOWN TO L THEN BACK TO PARK. ISSUE 2 RANDOMLY (BUT OFTEN) WHEN YOU START THE VEHICLE AND SHIFT IT INTO DRIVE THERE IS A LONG DELAY BEFORE THE VEHICLE SHIFTS IN GEAR. YOU SHIFT TO D AND HIT THE GAS AND THE ENGINE REVS LIKE IT'S IN NEUTRAL. LOOKING AT THE DISPLAY THE D KEEPS FLASHING THEN EVENTUALLY IT WILL STOP FLASHING AND THE VEHICLE WILL GO IN GEAR. THIS IS HAPPENING MORE AND MORE FREQUENTLY. (posted on July 11, 2019) (available at https://www.nhtsa.gov/vehicle/2018/CHEVROLET/TRAVERSE/SUV /FWD#complaints) (last visited June 28, 2021).

- AUTO WILL NOT SHUT OFF WHEN PUT IN PARK. MESSAGE INDICATES 'PUT IN PARK'. TRIED SEVERAL TIMES. ENGINE WILL GO OFF, ELECTRONICS STAY ON. WOULD DRAIN BATTERY IF LEFT ON. ALSO, BLUETOOTH CONTINUES TO DISCONNECT. BRAKES SQUEAK CONSTANTLY, FROM THE

CLASS ACTION COMPLAINT

TIME IT WAS DRIVEN OFF THE LOT. CAR STUTTERS WHEN YOU ATTEMPT TO ACCELERATE. CAR HAS BEEN TO DEALER MANY TIMES, SUPPOSEDLY 'FIXED'. I WAS TOLD TO TRY HIGHER OCTANE GAS. THIS SHOULD NOT BE NECESSARY. ELECTRICAL PROBLEMS ARE INCREASING. WE HAVE PURCHASED SEVERAL CHEVROLETS, THIS IS THE ABSOLUTE WORST VEHICLE AS FAR AS PROBLEMS WHICH, AFTER 2-1/2 YEARS, HAVE NOT BEEN REPAIRED. WHY IS THERE NOT A RECALL??? CAR IS CURRENTLY AT THE DEALER, AGAIN. *TR (posted on June 19, 2020) (available at https://www.nhtsa.gov/vehicle/2018/CHEVROLET/TRAVERSE/SUV /FWD#complaints) (last visited June 28, 2021).

- WHEN SHIFTING INTO PARK AND ATTEMPTING TO TURN OFF THE CAR, 80% OF THE TIME THE VEHICLE WOULD NOT REGISTER THAT THE CAR WAS IN PARK AND ALLOW THE VEHICLE TO TURN OFF. IT WOULD ALARM & CHARM WITH A MESSAGE TO "SHIFT TO PARK". THIS IS A KNOWN MANUFACTURING ISSUES WITH THE CHEVROLET TRAVERSE, GMC ACADIAS, AND POSSIBLY OTHER MODELS OF CHEVY/GMC. THIS IS A MAJOR SAFETY CONCERN AS THERE IS NO WAY TO KNOW IF THE VEHICLE IS TRULY IN PARK AND CAN LEAVE YOU IN SCARY SITUATIONS WHEN YOU CANNOT TURN OFF THE CAR. WE HAVE ALSO BEEN STRANDED WITH A DEAD BATTERY BECAUSE THE "SHIFT TO PARK" CHIME AND MESSAGE DRAINED THE BATTERY. CHEVROLET HAS PROVIDED THEIR DEALERSHIPS WITH BULLETINS IN HOW TO ADD A JUMPER HARNESS AND ADD/REPLACE A SWITCH IN THE GEAR SHIFT ASSEMBLY TO CORRECT THE ISSUE, BUT REFUSE TO TAKE ACCOUNTABILITY. I HAVE HAD MULTIPLE SERVICE ADVISORS ADMIT THEY HAVE HAD TO FIX NUMEROUS GEAR SHIFTERS AND THAT THIS IS A KNOWN ISSUE. A RECALL NEEDS TO BE ISSUED ON THIS PROBLEM AS IT IS A SAFETY CONCERN FOR ANYONE AFFECTED. PLEASE ADDRESS! I AM INCLUDING MY RECEIPT ON THE SERVICE I HAD TO PAY FOR TO FIX THIS PROBLEM. ALSO AN EXAMPLE OF ONE OF THE TECHNICAL BULLETINS CHEVROLET HAS SENT THEIR SERVICE DEPARTMENT. (posted on May 5, 2021) (available at https://www.nhtsa.gov/vehicle/2018/CHEVROLET/TRAVERSE/SUV /FWD#complaints) (last visited June 28, 2021).

**2019 Chevrolet Traverse**

- WHEN PLACING VEHICLE IN PARK - SYSTEM ERROR REPORTS VEHICLE IS NOT IN PARK AND WILL NOT ALLOW

CLASS ACTION COMPLAINT

CAR TO BE PROPERLY TURNED OFF. TOOK VEHICLE INTO CHEVROLET DEALERSHIP WITH EXPENSIVE PART REPLACED AND ERROR HAS COME UP AGAIN NOT ALLOWING OWNER TO TURN OFF VEHICLE DUE TO ERROR OF VEHICLE NOT IN PARK WHEN GEAR SHIFTER IS IN PARK. FIRST CORRECTED 10/15. ERROR CAME BACK 11/7. GOOGLED WITH KNOWN ERROR OCCURRING HOWEVER NO RECALL AND CONCERN FOR SAFETY THAT VEHICLE WILL NOT PROPERLY TURN OFF AND DOES NOT RECOGNIZE PARKED POSITION OF GEAR SHIFTER. (posted on November 8, 2020) (available at https://www.nhtsa.gov/vehicle/2019/CHEVROLET/TRAVERSE/SUV /AWD#complaints) (last visited June 28, 2021).

- "SHIFT TO PARK" MESSAGE APPEARS AFTER PUTTING THE VEHICLE IN PARK AND TRYING TO TURN THE ENGINE OFF. VEHICLE IS CLEARLY IN PARK, BUT VEHICLE DOES NOT SEEM TO RECOGNIZE IT IS IN PARK. HAPPENS INTERMITTENTLY. TO BE ABLE TO TURN OFF THE CAR, I WILL NEED TO PUT THE CAR IN DRIVE AND THEN BACK TO PARK. SOMETIMES IT FIXES ON THE FIRST TIME, OTHER TIMES I NEED TO DO IT MULTIPLE TIMES. (posted on February 7, 2021) (available at https://www.nhtsa.gov/vehicle/2019/CHEVROLET/TRAVERSE/SUV /AWD#complaints) (last visited June 28, 2021).

- WHEN TURNING OFF THE TRAVERSE, A "SHIFT TO PARK" MESSAGE IS BEING DISPLAYED DESPITE THE VEHICLE BEING IN PARK WHICH DOES NOT ALLOW THE INTERNAL ELECTRONICS (SUCH AS THE RADIO) TO TURN OFF WHEN EXITING THE VEHICLE. SOMETIMES SHIFTING OUT OF AND BACK INTO PARK OR HITTING THE BUTTONS ON THE SHIFTER FIX THE PROBLEM. RESEARCH SHOWS THERE ARE AT LEAST 2 GM SERVICE BULLETINS WHICH COVER A NUMBER OF THEIR DIFFERENT VEHICLES. SERVICE IS SCHEDULED WITH THE DEALER TO FIX, BUT MILEAGE PUTS IT JUST OUT OF WARRANTY, SO WE'LL SEE HOW MUCH THEY CHARGE FOR THIS MANUFACTURING/DESIGN DEFECT. (posted on March 14, 2021) (available at https://www.nhtsa.gov/vehicle/2019/CHEVROLET/TRAVERSE/SUV /AWD#complaints) (last visited June 28, 2021).

**2019 Chevrolet Blazer**

- When car is placed into park and try to turn off engine, warning chime with screen notification stating place car into park. When this happens, car is already in park. (posted on June 17, 2021) (available at

https://www.nhtsa.gov/vehicle/2019/CHEVROLET/BLAZER/SUV/A
WD#complaints) (last visited June 28, 2021).

27.     Complaints filed by consumers with the NHTSA and other websites, continue to accrue and demonstrate that the Shifter Defect is a widespread, dangerous, and unresolved problem.

28.     Many of the complaints reveal that GM, through its network of dealers and repair technicians, has been made aware of the Shifter Defect. In addition, the complaints indicate that, despite having knowledge of the Shifter Defect and even armed with knowledge of the exact vehicles affected, GM often refused to diagnose the Shifter Defect or otherwise attempt to repair it while the Class Vehicles were still under warranty.

29.     On January 9, 2017, GM issued the first in a series of bulletins alerting its Chevrolet dealerships of the Shifter Defect on the Class Vehicles. The bulletin, No. PIC6244, was entitled "Diagnostic Aid For Vehicles With Shift To Park Message And All DTCs P1AEE P1AEF P1AF0 P1AF2 P1E22" warning GM's dealerships of the Shifter Defect on the 2016-2017 Chevrolet Malibu and Chevrolet Volt vehicles. Bulletin No. PIC6244 is attached as **Exhibit A.** Bulletin, No. PIC6244 was updated on October 17, 2017, to add 2018 model year vehicles and updated on September 17, 2018, to add 2019 model year vehicles.

30.     On December 5, 2017, GM issued Bulletin No. PIE0441 titled "Engineering Information – Shift to Park Message Displayed," attached as **Exhibit B**, warning GM's dealerships of the Shifter Defect on the 2018 Chevrolet Malibu vehicles.

31.     On December1, 2018, GM issued Bulletin No. 18-NA-297 titled "Message Displaying Shift to Park when in Park," attached as **Exhibit C**, warning GM's dealerships of the Shifter Defect on the 2016-2018 Chevrolet Malibu, the 2018 Traverse, and the 2017-2019 Acadia vehicles.

CLASS ACTION COMPLAINT

32.     In September 2019, GM issued Bulletin No. 19NA206 titled "Intermittent Shift to Park Message Displayed While Vehicle in Park, "attached as **Exhibit D**, warning dealerships of the Shifter Defect on 2016-2019 Chevrolet Malibu, 2016-2019 Chevrolet Volt, 2018-2019 Chevrolet Traverse, 2019 Chevrolet Blazer vehicles.

33.     Each Class Vehicle sale or lease is accompanied with the GM identical 3-year / 36,000-mile New Vehicle Limited Warranty ("NVLW").

34.     Prior to purchasing or leasing their vehicles, Plaintiffs relied upon GM's representations of the NVLW that accompanied the sale of the vehicle, and such representations were material to Plaintiffs' decision to purchase and lease their vehicles.

35.     The terms of GM's NVLW are contained in the warranty booklet that Plaintiffs and all the Class Members received at the time they purchased or leased the Class Vehicles. Relevant terms include:

> GM will cover repairs to the vehicle during the warranty period in accordance with the following terms, conditions, and limitations.
>
> **What Is Covered**
>
> **Warranty Applies**
>
> This warranty is for Chevrolet vehicles registered in the United States and normally operated in the United States, and is provided to the original and any subsequent owners of the vehicle during the warranty period.
>
> **Repairs Covered**
>
> The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period, excluding slight noise, vibrations, or other normal characteristics of the vehicle. Needed repairs will be performed using new, remanufactured, or refurbished parts.
>
> ***
>
> **Obtaining Repairs**
>
> To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs. Reasonable time must be

CLASS ACTION COMPLAINT

allowed for the dealer to perform necessary repairs.

36.     GM controls the execution of all warranty repairs by its Chevrolet dealers, as it provides training, materials, special tools, diagnostic software, and replacement parts to its Chevrolet dealers, and demands that the warranty repairs be performed in strict accordance with its repair guidelines, Technical Service Bulletins, and other instructions.

37.     In return, GM pays its authorized Chevrolet dealerships a monetary compensation for such warranty repairs.

38.     Therefore, GM's authorized Chevrolet dealerships are its agents for the purpose of vehicle repairs, and knowledge of a defect reported to any such dealer can be imputed onto GM.

39.     Despite GM's knowledge and warnings to its authorized dealerships, GM refuses to acknowledge and repair the defect. GM refuses to cover the cost of servicing the Shifter Defect when owners and lessees of the Class Vehicles present the vehicles for repair.

40.     In cases where the owners and lessees of the Class Vehicles have been willing to pay out of pocket to service the issue, GM replaces the faulty drive unit (transmission) and/or the park switch in the transmission control assembly with another faulty drive unit (transmission) and/or park switch.

41.     The replacement makes the Shifter Defect completely susceptible to reoccurrence and is simply a stop-gap fix of the problem that does not address the underlying and known cause of the Shifter Defect.

**Plaintiff Doug Spindler**

42.     In February 2020, Plaintiff Spindler purchased a used 2017 Chevrolet Volt (hereafter "Spindler Vehicle") from Stevens Creek Chevrolet in San Jose, California, an authorized GM dealership, for approximately $25,104.

CLASS ACTION COMPLAINT

43.    The safety and reliability of the vehicle were important factors in Plaintiff Spindler's decision to purchase the Spindler Vehicle. Plaintiff Spindler test-drove the vehicle to ensure that the vehicle was fit for its intended purpose and that there were no apparent issues with the vehicle's safety, performance, and reliability.

44.    Stevens Creek Chevrolet assured Plaintiff Spindler that the Spindler Vehicle was accompanied by GM's NVLW and that the vehicle itself was safe, reliable, and free from defects of workmanship. Plaintiff Spindler's Vehicle also had a certified preowned vehicle warranty and Voltec power train warranty.

45.    Despite these assurances, the Spindler Vehicle began experiencing the Shifter Defect in approximately May 2020.

46.    Since then, the Shifter Defect has affected Plaintiff Spindler. Plaintiff Spindler has been left stranded in the vehicle commuting to and from work, running errands, and while visiting friends and family.

47.    In October 2021, Plaintiff Spindler was able to have his vehicle serviced for the Shifter Defect at Winter Chevrolet, an authorized GM dealer. The entire shifter mechanism in the Spindler Vehicle was replaced.

48.    The first repair that Winter Chevrolet attempted used replacement parts that did not fit the Spindler Vehicle. Winter Chevrolet charged Plaintiff Spindler approximately $900 for that first repair. It then attempted to fix the Spindler Vehicle a second time for the same issue, charging Plaintiff Spindler an additional $300. Thus, Winter Chevrolet charged Plaintiff Spindler approximately $1200 for the repairs, reduced from $1400 after Plaintiff Spindler informed the dealership that the shifter problem was widely known.

49.    After the second repair, the Spindler Vehicle only worked for approximately one day before the check engine light came on, indicating a failure with the repairs, and the Spindler

CLASS ACTION COMPLAINT

Vehicle was again brought back to Winter Chevrolet and is currently awaiting a third round of repairs.

50.    However, the Shifter Defect remains completely susceptible to reoccurrence. Because GM has replaced the defective parts with other defective parts, GM has failed to repair the Shifter Defect.

51.    Plaintiff Spindler was never informed by GM, Stevens Creek Chevrolet, Winter Chevrolet or by any other agent of GM, that the Spindler Vehicle suffered from the Shifter Defect. GM's omissions were material to Plaintiff Spindler. Had GM or its agents disclosed its knowledge of the Shifter Defect before Plaintiff Spindler purchased the Spindler Vehicle, Plaintiff Spindler would have seen and been aware of the disclosures. Moreover, Plaintiff Spindler would not have purchased the Spindler Vehicle or would have paid less for it.

**Plaintiff Makesha Satterwhite**

52.    In August 2018, Plaintiff Satterwhite purchased a new 2019 Chevrolet Traverse (hereafter "Satterwhite Vehicle") from Mountainview Chevrolet in Upland, California, an authorized GM dealership, for approximately $39,900.

53.    The safety and reliability of the vehicle were important factors in Plaintiff Satterwhite's decision to purchase the Satterwhite Vehicle. Plaintiff Satterwhite test-drove the vehicle to ensure that the vehicle was fit for its intended purpose and that there were no apparent issues with the vehicle's safety, performance, and reliability.

54.    Mountainview Chevrolet assured Plaintiff Satterwhite that the vehicle was accompanied by GM's NVLW and that the vehicle itself was safe, reliable, and free from defects of workmanship.

55.    Despite these assurances, the Satterwhite Vehicle began experiencing the Shifter Defect in approximately September 2021.

CLASS ACTION COMPLAINT

56.     Since then, the Shifter Defect has affected Plaintiff Satterwhite. Plaintiff Satterwhite has been stranded in the Satterwhite Vehicle commuting to and from work, running errands, and while visiting friends and family.

57.     In approximately October 2021, Plaintiff Satterwhite was able to have her vehicle serviced for the Shifter Defect at Victorville Chevrolet in Victorville, California.

58.     Victorville Chevrolet's service center informed her that an "internal failure in shifter" was causing the shift-to-park message to appear even when the vehicle was is in park. As a result, the Victorville Chevrolet service center replaced the transmission shift control assembly and reported that the replacement enables the vehicle to "work as designed." *See* Exhibit E.

59.     Victorville Chevrolet charged her approximately $1100 for that repair.  However, the Shifter Defect remains completely susceptible to reoccurrence.

60.     Because GM has replaced the defective parts with other defective parts, GM has failed to repair the Shifter Defect.

61.     Plaintiff Satterwhite was never informed by GM, Mountainview Chevrolet, or by any other agent of GM, that the Satterwhite Vehicle suffered from the Shifter Defect. GM's omissions were material to Plaintiff Satterwhite. Had GM or its agents disclosed its knowledge of the Shifter Defect before Plaintiff Satterwhite purchased the Satterwhite Vehicle, Plaintiff Satterwhite would have seen and been aware of the disclosures. Moreover, Plaintiff Satterwhite would not have purchased her vehicle or would have paid less for it.

## V.     CLASS ALLEGATIONS

### A.     The Class

62.     Plaintiffs bring this case as a class action on behalf of the following class pursuant

to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

> All persons or entities in the state of California who bought or leased a 2016-2019 Chevrolet Malibu, 2016-2019 Chevrolet Volt, 2018-2019 Chevrolet Traverse, or 2019 Chevrolet Blazer.

63.     Excluded from the Class are Defendant, its employees, agents, legal representatives, assigns and successors and any entity in which Defendant has a controlling interest.  Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.  Claims for personal injury are specifically excluded from the Class.

**B.      Numerosity**

64.     Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members in the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs are informed and believe, and on that basis alleges, that hundreds of thousands of Class Vehicles have been sold and leased within California.

**C.      Common Questions of Law and Fact**

65.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. These questions include:

a)     Whether the Class Vehicles were sold with a defective transmission gear shifter that causes the vehicle to intermittently display a "Shift to Park" message even though the shifter is in "Park" position;

b)     Whether the Class Vehicles were sold with a defective transmission gear shifter that prevents such vehicles from shutting off and being locked;

c)     Whether the Class Vehicles were sold with a defective transmission gear

CLASS ACTION COMPLAINT

shifter that prevents such vehicles from starting their engines;

d)     Whether Defendant knew about the above-described defect but failed to disclose the problem and its consequences to its customers;

e)     Whether Defendant breached the express warranties and the MMWA when it refused to or failed to repair the defect with the transmission gear shifter at no expense to the customer;

f)     Whether Defendant breached the implied warranties and the MMWA when it sold vehicles that contain defect with its transmission gear shifter;

g)     Whether Defendant breached the implied warranty of merchantability pursuant to state law;

h)     Whether Defendant breached its express warranties under state law;

i)     Whether Defendant violated the CLRA;

j)     Whether Defendant violated the UCL;

k)     Whether defendant violated the Song-Beverly Act;

l)     Whether Defendant is liable for fraudulent omission and/or concealment;

m)     Whether Defendant is liable for unjust enrichment;

n)     Whether Defendant is liable for damages, and the amount of such damages;

o)     Whether Defendant should be required to disclose the existence of the defect; and

p)     Whether Plaintiffs and the members of the Class are entitled to equitable relief including injunctive relief.

**D.     Typicality**

66.     Plaintiffs' claims are typical of the claims of the Class since Plaintiffs purchased

or leased a defective Class Vehicle, as did each member of the Class. Furthermore, Plaintiffs and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent members of the Class.

**E.    Adequacy**

67.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor their counsel have any interest which might cause them not to vigorously pursue this action.

**F.    Superiority**

68.    A class action is the superior method for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, Class Members can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

69.    Defendant has acted, and refused to act, on grounds generally applicable to the

Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VI.    TOLLING OF STATUTES OF LIMITATIONS

70.    Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Shifter Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the Class were deceived regarding the Class Vehicles and could not reasonably discover the Shifter Defect or Defendant's deception with respect to the Shifter Defect.

71.    Defendant and its agents continue to deny the existence and extent of the Shifter Defect, even when questioned by Plaintiffs and the members of the Class.

72.    Plaintiffs and the members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that the Defendant was concealing a defect and/or the Class Vehicles contained the Shifter Defect. As alleged herein, the existence of the Shifter Defect was material to Plaintiffs and the members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and the members of the Class could not have discovered through the exercise of reasonable diligence the existence of the Shifter Defect or that the Defendant was concealing the Shifter Defect.

73.    At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and the members of the Class the true standard, quality, and grade of the Class Vehicles and to disclose the Shifter Defect due to its exclusive and superior knowledge of the existence and extent of the Shifter Defect in Class Vehicles.

74.    Defendant knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiffs and members of the Class reasonably relied on Defendant's knowing, active, and affirmative concealment.

75.    For these reasons, all applicable statutes of limitation have been tolled based on

the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

**FIRST CAUSE OF ACTION**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq*.**
**(On Behalf of Plaintiffs and the Class)**

76.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77.    Plaintiffs brings this claim on behalf of themselves and the Class against General Motors LLC.

78.    Plaintiffs and each Class Member are a "consumer" as defined in 15 U.S.C. section 2301(3).

79.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. section 2301(4)-(5).    As a warrantor, Defendant is required to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiffs and the Class Members.  *Id*. § 2304(a)(1)

80.    The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. section 2301(1).

81.    Title 15 U.S.C. section 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

82.    Defendant's NVLW is a "written warranty" within the meaning of 15 U.S.C. section 2301(6). Defendant's implied warranty is an "implied warranty" within the meaning of 15 U.S.C. section 2301(7).

83.    Defendant expressly warranted any vehicle defect due to materials or workmanship, under the NVLW promising to repair or replace components that fail to function properly during normal use, for the first 3-years or 36,000-miles, whichever comes first.

CLASS ACTION COMPLAINT

84.    As a part of the implied warranty of merchantability, Defendant warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

85.    As described above, Defendant's failure and/or refusal to repair the Shifter Defect within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

86.    Plaintiffs and the Class notified Defendant of the breach within a reasonable time and/or were not required to do so. Defendant was also on notice of the Shifter Defect from, among other sources, the complaints and service requests it received from Class Members and its dealers.

87.    As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs and the Class Members have suffered damages.

88.    Plaintiffs and the Class have had sufficient direct dealings with either Defendant or its agents (dealerships and distributors) to establish privity of contract between Defendant and Plaintiffs and the Class Members. Nonetheless, privity is not required here because Plaintiffs and the Class Members are intended third-party beneficiaries of Defendant's written warranty between Defendant and its dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles as the warranty agreements were designed for and intended to benefit consumers.

89.    The Class Vehicles share a common defect in that they are manufactured with defective materials and/or with poor workmanship. Contrary to Defendant's representations about its vehicles, the Class Vehicles are defective in manufacture, materials and/or workmanship and are unsafe. The Class Vehicles share a common defect that prevents the driver

CLASS ACTION COMPLAINT

from being able to turn off and lock the vehicle. The Shifter Defect occurs within the warranty terms and period.

90.    Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. Defendant has long been on notice of the claims of Plaintiffs and Class Members and has refused to acknowledge the existence of the defect and/or refused to provide a remedy.

91.    At the time of sale or lease of each Class Vehicle, Defendant knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Shifter Defect and inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Shifter Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

92.    Plaintiffs and the Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Defendant is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the Class Members have not reaccepted their Class Vehicles by retaining them.

93.    Pursuant to 15 U.S.C. section 2310(d)(3), the amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25 and the amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs. Plaintiffs, individually and on behalf of other Class Members, seek all damages permitted by law, including diminution in value of their Class Vehicles, in an amount to be proven at trial.

94.    In addition, pursuant to 15 U.S.C. section 2310(d)(2), Plaintiffs and the Class

CLASS ACTION COMPLAINT

Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the Class Members in connection with the commencement and prosecution of this action.

## SECOND CAUSE OF ACTION
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Class)**

95.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

96.     Plaintiffs bring this claim on behalf of themselves and the Class against General Motors LLC.

97.     GM is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

98.     With respect to leases, GM is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

99.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

100.    GM provided all purchasers and lessees of the Class Vehicles with an express warranty described herein, which became a material part of the bargain. Accordingly, GM's express warranty is an express warranty under applicable state law.

101.    In a section entitled "What Is Covered," GM's Warranty provides in relevant part that "The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period . . . Needed repairs will be performed using new, remanufactured, or refurbished parts."

102.    GM expressly warranted any vehicle defect due to materials or workmanship

CLASS ACTION COMPLAINT

under GM's New Vehicle Limited Warranty ("NVLW") which provides coverage for the first 3 years or 36,000 miles, whichever comes first.

103.     The Warranty formed the basis of the bargain that was reached when Plaintiffs and other members of the Class purchased or leased their Class Vehicles.

104.     Defendant breached the express warranty through the acts and omissions described above.

105.     Plaintiffs and the members of the Class have had sufficient direct dealing with either GM or its agents (*i.e.*, dealerships and technical support) to establish privity of contract between General Motors LLC, on one hand, and Plaintiffs and each of the other members of the Class on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Class are the intended third-party beneficiaries of contracts between GM and its distributors and dealers, and specifically, of GM's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumer only.

106.     Any attempt by GM to disclaim or limit recovery to the terms of the express warranty is unconscionable and unenforceable here. Specifically, the warranty limitation is unenforceable because GM knowingly sold, distributed, or leased defective products without informing consumers about the Shifter Defect. The time limits are unconscionable and inadequate to protect Plaintiffs and the members of the Class. Among other things, Plaintiffs and the members of the Class did not determine these time limitations and/or did not know of other limitations not appearing in the text of the warranties, the terms of which were drafted by Defendant and unreasonable favored Defendant. A gross disparity in bargaining power and knowledge of the extent, severity, and safety risk of the Shifter Defect existed between GM and

CLASS ACTION COMPLAINT

the members of the Class.

107.   Further, the NVLW promising to repair and/or correct a manufacturing or workmanship defect fails of its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the members of the Class whole, because GM has failed and/or has refused to adequately provide the promised remedies, *i.e.*, a permanent repair, within a reasonable time.

108.   Plaintiffs were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of its written warranty would have been futile. GM was also on notice of the Shifter Defect from the complaints and service requests it received from members of the Class, including those formal complaints submitted to NHTSA, and through other internal sources. However, Plaintiffs provided notice to GM and/or its agents when he presented her vehicle for repair at authorized GM dealerships.

109.   As a result of GM's breach of the applicable express warranties, owners and/or lessees of the Class Vehicles suffered, and continue to suffer, an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Shifter Defect, Plaintiffs and the members of the Class were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run. Had Plaintiffs known this information, they would not have purchased or would have paid less for their Class Vehicles.

110.   As a result of GM's breach of the express warranty, Plaintiffs and the members of the Class are entitled to legal and equitable relief against GM, including actual damages, specific performance, attorney's fees, costs of suit, and other relief as appropriate.

**THIRD CAUSE OF ACTION**
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of Plaintiffs and the Class)**

111.   Plaintiffs repeat and re-allege each and every allegation contained in the preceding

CLASS ACTION COMPLAINT

paragraphs as if fully set forth herein.

112.    Plaintiffs bring this claim on behalf of themselves and the Class against General Motors LLC.

113.    GM is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

114.    With respect to leases, GM is and was at all relevant times a lessor of motor vehicles within the meaning of the Uniform Commercial Code and relevant state law.

115.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code and relevant state law.

116.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary for which vehicles are used is implied by law under the Uniform Commercial Code and relevant state law.

117.    GM knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. GM directly sold and marketed the Class Vehicles to customers through its agents, the authorized dealers, like those from whom Plaintiffs and the members of the Class bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. GM knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Plaintiffs and the members of the Class, with no modification to the defective Class Vehicles.

118.    Defendant provided Plaintiffs and the members of the Class with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

119.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles that were manufactured, supplied, distributed, and/or sold by GM were safe and reliable

CLASS ACTION COMPLAINT

for providing transportation; and (ii) a warranty that the Class Vehicles would be fit for their intended use while the Class Vehicles were being operated.

120.    Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the members of the Class with reliable, durable, and safe transportation. Instead, the Class Vehicles were and are defective at the time of sale or lease and thereafter as more fully described above. Defendant knew of this defect at the time these sale or lease transactions occurred.

121.    As a result of GM's breach of the applicable implied warranties, Plaintiffs and the members of the Class of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Shifter Defect, Plaintiffs and the members of the Class were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

122.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of the Uniform Commercial Code and relevant state law.

123.    Plaintiffs and the members of the Class have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

124.    Plaintiffs and the members of the Class were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of warranty would have been futile. Defendant was also on notice of the Shifter Defect from the complaints and service requests it received from Plaintiffs and the members of the Class and through other internal sources.

125.    As a direct and proximate cause of GM's breach, Plaintiffs and the members of

the Class suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Plaintiffs and the members of the Class have incurred or will incur economic damages at the point of repair in the form of the cost of repair as well as additional losses. Had Plaintiffs and the Class known this information, they would not have purchased or would have paid less for their Class Vehicles.

126.    As a direct and proximate result of GM's breach of the implied warranty of merchantability, Plaintiffs and the members of the Class have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

127.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

128.    Plaintiffs bring this claim on behalf of themselves and the Class.

129.    This cause of action is brought under the CLRA. Plaintiffs and members of the Class are consumers as defined by California Civil Code § 1761(d), and the Class Vehicles constitute goods within the meaning of the CLRA.

130.    Defendant has violated, and continues to violate, the CLRA by engaging int eh following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that did result in, the sale and/or lease of the Class Vehicles to Plaintiffs and members of the Class in violation of, *inter alia*, the following provisions:

        a.    Representing that the goods have characteristics, uses, or benefits which they do not have (Cal. Civ. Code §1770(a)(5));

        b.    Representing that that goods are of a particular standard, quality, or grade

if they are of another (Cal. Civ. Code § 1770(a)(7));

   c.  Advertising goods with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

   d.  Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

   e.  Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

131.   Plaintiffs and members of the Class, in purchasing/leasing and using the Class Vehicles, did reasonably act in response to Defendant's above representations or would have considered the omitted facts set forth herein as material to their purchasing/leasing decision. Plaintiffs and members of the Class have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

132.   Defendant engaged in unfair and deceptive acts, omissions, and practices by representing to Plaintiffs and the members of the Class that the Class Vehicles were safe, reliable, and free from defects of workmanship and failing to disclose that the Class Vehicles had the Shifter Defect which caused them to unintentionally, and uncontrollably failed to enter into park mode despite the vehicle's shift lever being placed in the "Park" position.

133.   The representations regarding the Class Vehicles were material to Plaintiffs and the members of the Class. Defendant intended that Plaintiffs and the members of the Class would rely on these representations and they did, in fact, rely on the representations.

134.   Had Plaintiffs and the Class known this information, they would not have purchased or would have paid less for their Class Vehicles.

135.   In accordance with California Civil Code § 1780(a), Plaintiffs and members of

CLASS ACTION COMPLAINT

1   the Class seek injunctive relief for Defendant's violations of the CLRA.

2       136.    In accordance with California Civil Code §§ 1782(a) and (d), Plaintiffs have

3   provided Defendant with the appropriate notice and demand and will amend this Complaint upon

4   receiving Defendant's response.

5   

**FIFTH CAUSE OF ACTION**

6   **Unlawful, Unfair and Fraudulent Business Practices in Violation of California Consumers**
**Business and Professions Code §§ 17200, *et seq.***

7   (**On Behalf of Plaintiffs and the Class**)

8       137.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding

9   paragraphs as if fully set forth herein.

10      138.    Plaintiffs bring this claim on behalf of themselves and the Class.

11

12      139.    The UCL defines unfair competition to include any "unfair," "unlawful," or

13  "fraudulent" business act or practice.

14      140.    Defendant has violated, and continues to violate, the UCL by representing to

15  Plaintiffs and the members of the Class that the Class Vehicles were safe, reliable, and free from

16  defects of workmanship and failing to disclose that the Class Vehicles had the Shifter Defect

17  which caused them to unintentionally, and uncontrollably failed to enter into park mode despite

18  the vehicle's shift lever being placed in the "Park" position.

19

20      141.    By engaging in the above-described acts and practices, Defendant has committed

21  an unfair business practice within the meaning of the UCL. Plaintiffs and the Class members

22  have suffered substantial injury they could not have reasonably avoided other than by not

23  purchasing or leasing the Class Vehicles.

24      142.    Defendant's acts and practices have deceived and/or are likely to deceive the

25  Class members and the public and thus constitute a fraudulent business practice. Defendant

26  uniformly marketed and advertised the Class Vehicles as safe, reliable, and free from defect

27

CLASS ACTION COMPLAINT

when, in fact, they are not because they contain the Shifter Defect that causes them to unintentionally, and uncontrollably failed to enter into park mode despite the vehicle's shift lever being placed in the "Park" position, which Defendant knew or should have known.

143.   As discussed above, Plaintiffs and members of the Class purchased and/or leased the Class Vehicles directly from GM and/or its authorized agents. Plaintiffs and members of the Class were injured in fact and lost money as a result of such acts of unfair competition.

144.   The injuries suffered by Plaintiffs and members of the Class greatly outweigh any potential countervailing benefit to consumers or to competition. The injuries suffered by Plaintiffs and the Class should have or could have been reasonably avoided.

145.   Defendant received the funds paid by Plaintiffs and the Class members and profited by misrepresenting the properties and quality of the Class Vehicles that they otherwise would not have sold. Defendant's revenues attributable thereto are, thus, directly traceable to the substantial amount of money paid by Plaintiffs and members of the Class.

146.   Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices as described herein, which is ongoing, Plaintiffs and members of the Class will continue to be injured by Defendant's conduct and as a result do not have an adequate remedy at law. Plaintiffs and members of the Class request this Court to enjoin Defendant from continuing to violate the UCL.

147.   The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date. Plaintiffs and members of the Class are therefore entitled to relief as appropriate for this cause of action.

**SIXTH CAUSE OF ACTION**
**Violation of the Song-Beverly Consumer Warranty Act**
**Cal. Civ. Code § 1791, *et seq.***
**(On Behalf of Plaintiffs and the Class)**

148.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

149.     Plaintiffs brings this claim on behalf of themselves and the Class.

150.    Plaintiffs and the Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

151.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

152.    Defendant is a "manufacturer[]" of the Class Vehicles within the meaning of Cal. Civ. Code §1791(j).

153.    Defendant impliedly warranted to Plaintiffs and the Class members that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792. However, the Class Vehicles do not have the quality that a buyer would reasonably expect.

154.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

       a.   Pass without objection in the trade under the contract description.

       b.   Are fit for the ordinary purposes for which such goods are used.

       c.   Are adequately contained, packaged, and labeled.

       d.   Conform to the promises or affirmations of fact made on the container or label.

155.    Plaintiffs and members of the Class purchased or leased the Class Vehicles, manufactured by GM, from GM by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller

CLASS ACTION COMPLAINT

1
2

of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

3
4
5
6
7
8
9
10
11

156.    Defendant provided Plaintiffs and members of the Class with one or more express warranties. In a section entitled "What Is Covered," GM's Warranty provides in relevant part that "The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period . . . Needed repairs will be performed using new, remanufactured, or refurbished parts." GM expressly warranted any vehicle defect due to materials or workmanship under GM's New Vehicle Limited Warranty ("NVLW") which provides coverage for the first 3 years or 36,000 miles, whichever comes first. As alleged herein, Defendant breached these express warranties.

12
13
14
15
16

157.    Plaintiffs and members of the Class experienced the Shifter Defect within the warranty periods, but Defendant failed to inform Plaintiffs and members of the Class of the existence of the Shifter Defect and associated safety hazard, and failed to provide a suitable repair or replacement of the defective components free of charge within a reasonable time.

17
18

158.    Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

19
20
21
22
23
24
25

159.    Contrary to the applicable implied warranties, the Class Vehicles' transmissions did not operate properly at the time of sale, leading to the manifestation of the Shifter Defect, making the Class Vehicles unfit for their ordinary and intended purpose of providing Plaintiffs and the Class members with reliable, durable, and safe transportation, would not pass without objection in trade, were not adequately labeled, and did not conform to the promises and affirmation on their labels.

26
27

160.    The Shifter Defect is inherent and was present in each Class Vehicle at the time of sale.

CLASS ACTION COMPLAINT

161.    Defendant was provided notice of the Shifter Defect by numerous consumer complaints made to authorized GM dealers nationwide, complaints to NHTSA and through GM's own testing. Affording Defendant a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant has known of and concealed the Shifter Defect and, on information and belief, has refused to repair the Shifter Defect free of charge within a reasonable time.

162.    Defendant has breached its express and implied warranties in violation of Cal. Civ. Code § 1791, *et seq.*

163.    As a direct and proximate result of Defendant's breach of its express and/or implied warranties, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial.

164.    Plaintiffs and members of the Class have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

165.    Plaintiffs and members of the Class seek actual damages, costs, attorneys' fees, and statutory damages as a result of Defendant's willful conduct alleged herein. Plaintiffs and members of the Class also seek reimbursement, replacement of the defective components, and/or the revocation of the purchase of lease of their Class Vehicles, and all other relief available under Cal. Civ. Code § 1794.

166.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

### SEVENTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

167.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT

168.    Plaintiffs bring this claim for unjust enrichment in the alternative to the previously plead claims, Causes of Action One through Six.

169.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase and lease of the Class Vehicles with the Shifter Defect. Defendant knowingly and willingly accepted and enjoyed these benefits.

170.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Class Vehicles would have the qualities, characteristics, and safety represented by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances without payment of the value to Plaintiffs and the Class.

171.    Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon. Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the law.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendant and in favor of Plaintiffs and the Class, and pray for judgment as follows:

a) An order certifying the proposed Class, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

b) A declaration that GM is financially responsible for notifying all the Class Members of the Shifter Defect;

c) An order enjoining GM from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles; compelling GM to issue a voluntary recall for the

CLASS ACTION COMPLAINT

Class Vehicles pursuant to 49 U.S.C. section 30118(a); compelling GM to repair and eliminate the Shifter Defect from every Class Vehicle; enjoining GM from selling the Class Vehicles with the misleading information; and/or compelling GM to reform its warranty in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

d)  Damages and restitution in an amount to be proven at trial;

e)  Any and all remedies provided pursuant to the express and implied warranty laws, common law fraud by concealment laws, and consumer protection statutes alleged herein;

f)  An award to Plaintiffs and the Class of compensatory, exemplary, and statutory damages as permitted by law, including interest, in an amount to be proven at trial;

g)  A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of Class Vehicles, and/or make full restitution to Plaintiffs and the Class Members;

h)  An award of pre-judgment and post-judgment interests, as provided by law;

i)  An award of attorneys' fees and recoverable litigation expenses as may be allowable under applicable law;

j)  Leave to amend the Complaint to conform to the evidence produced at trial; and

k)  Such other relief as the Court may deem appropriate under the circumstances.

## VIII.   JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial for any and all issues in this action so triable.

Dated: December 2, 2021

/s/ Michael F. Ram
Michael F. Ram

**MORGAN & MORGAN**

CLASS ACTION COMPLAINT

**COMPLEX LITIGATION GROUP**
Michael F. Ram*
Marie N. Appel*
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
mram@forthepeople.com
mappel@forthepeople.com


**TURKE STRAUSS, LLP**
Samuel J. Strauss
Raina C. Borrelli
613 Williamson Street, Suite 100
Madison, WI 53703
Telephone: (608) 237-1775
sam@turkestrauss.com
raina@turkestrauss.com


*Attorneys for Plaintiffs and the Proposed
Class*

CLASS ACTION COMPLAINT