UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUG SPINDLER, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>GENERAL MOTORS, LLC,<br><br>    Defendant. | Case No. 21-cv-09311-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 45 |

Defendant General Motors, LLC ("GM") moves to dismiss an amended class action complaint filed by plaintiffs Doug Spindler and Makesha Satterwhite ("the plaintiffs"), who allege various claims arising from a "shifter defect" in GM vehicles that prevents those vehicles from recognizing when they are placed in park. The motion is DENIED in part and GRANTED in part.

Having addressed most of GM's arguments on the prior motion to dismiss, which I denied for the majority of the claims, the plausibility of only three claims is now at issue. The Magnuson-Moss Warranty Act ("MMWA") claim is DISMISSED, as the plaintiffs concede that they have not met the statutorily required number of named plaintiffs. GM's motion is DENIED with respect to Satterwhite's breach of express warranty and Song-Beverly Consumer Warranty Act ("Song-Beverly Act") claims; she has adequately pleaded that she presented her vehicle for multiple repairs. GM has also raised other issues that I rejected previously; its motion is otherwise DENIED.

**BACKGROUND**

Because the allegations in the First Amended Complaint ("FAC") are almost identical to those in the previous complaint, I will detail only those most relevant to this motion. A more thorough factual background can be found in my Order on the previous motion to dismiss, which I

incorporate by reference here.  *See* Order Granting in Part and Denying in Part Mot. to Dismiss ("First MTD Order") [Dkt. No. 43] 2:6-4:20.

The plaintiffs allege that certain GM vehicles have what they describe as a "shifter defect," where the vehicle fails to detect that its driver placed it in park, preventing the driver from shutting off and locking the vehicle.  FAC [Dkt. No. 44] ¶ 2.  Instead, the vehicle's instrument cluster displays an error message: "Shift to Park."  *Id.*  The plaintiffs contend that they are "forced to resort to all sorts of gimmicks to get their vehicles to detect that the shift lever is in fact in 'park'": wiggling the shifter, shifting the vehicle through gears, and starting and shutting off the engine. *Id.* ¶¶ 19, 21.  The plaintiffs allege that the defect "substantially impacts the value, safety, and use" of their vehicles and has left them stranded and stuck inside their vehicles.  *Id.* ¶¶ 3, 19-20.

The plaintiffs allege that "numerous other consumers have complained about the same issue" via complaints logged online and with the National Highway Traffic Safety Administration ("NHTSA").  *See id.* ¶¶ 22, 26.  As a result, they contend, GM knew or should have known about the defect.  *Id.* ¶ 25.

Beginning in January 2017, GM issued a series of bulletins alerting its Chevrolet dealerships to the shifter defect in certain vehicles.  *Id.* ¶¶ 29-32.  These vehicles were covered by GM's three-year, 36,000-mile new vehicle limited warranty ("NVLW"), which provides in part:

> GM will cover repairs to the vehicle during the warranty period in accordance with the following terms, conditions, and limitations.
>
> The warranty covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period, excluding slight noise, vibrations, or other normal characteristics of the vehicle.  Needed repairs will be performed using new, remanufactured, or refurbished parts.
>
> To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs.  Reasonable time must be allowed for the dealer to perform necessary repairs.

*Id.* ¶¶ 33, 35.  The plaintiffs contend that they relied on GM's representations of the NVLW before purchasing or leasing their vehicles, and that those representations were material to their decisions to do so.  *Id.* ¶ 34.

In February 2020, Spindler purchased a used 2017 Chevrolet Volt from an authorized GM

dealership in San Jose, California. *Id*. ¶ 42. The vehicle was covered by GM's NVLW, along with a certified preowned vehicle warranty and a Voltec powertrain warranty. *Id*. ¶ 44.

Spindler's vehicle began experiencing the shifter defect in May 2020. *Id*. ¶ 45. In October 2021, he took his vehicle to an authorized GM dealer, where the entire shifter mechanism was replaced. *Id*. ¶ 47. The FAC alleges that the first time the repair was attempted, the dealer used replacement parts that did not fit Spindler's vehicle but still charged him $900. *Id*. ¶ 48. It then attempted to fix the shifter a second time, charging him an additional $300. *Id*. About a day after the second repair, the vehicle's check engine light came on, "indicating a failure with the repairs." *Id*. ¶ 49. Spindler took his vehicle back to the dealership for additional repairs; the success or status of those repairs is unclear.[1] *See id*.

Satterwhite bought a new 2019 Chevrolet Traverse from an authorized GM dealership in Upland, California, in August 2018. *Id*. ¶ 52. It too was covered by GM's NVLW. *Id*. ¶ 54.

Satterwhite's vehicle began experiencing the shifter defect in September 2021. *Id*. ¶ 55. In October, she had her vehicle serviced for the defect at a Chevrolet service center. *Id*. ¶ 57. There, she was told that an "internal failure in shifter was causing the shift-to-park message to appear even when the vehicle was . . . in park." *Id*. ¶ 58. The service center replaced the transmission shift control assembly, charging Satterwhite approximately $1,100. *Id*. ¶¶ 58-59.

The FAC alleges that Satterwhite has experienced the defect at least twice since October 2021: on January 13, 2022, and February 15, 2022. *Id*. ¶ 61. Both times, her vehicle displayed the "shift to park" error message. *Id*.

On May 18, 2022, Satterwhite called the Chevrolet dealership in Victorville "to inform the dealership and GM that her vehicle continued to experience the shifter defect and to request a service appointment to assess why it was still exhibiting the shifter defect." *Id*. ¶ 62. The dealership told Satterwhite that she would need to pay $175 for a diagnostic check "before it would even look at her vehicle for the shifter defect," in addition to the cost of any repairs. *Id*.

---

[1] Like the initial complaint, which was filed on December 2, 2021, the FAC alleges that Spindler's vehicle is "currently awaiting a third round of repairs." FAC ¶ 49. The status of those repairs is unclear given the May 20, 2022, filing of the FAC. *See* Dkt. No. 44.

3

Because the dealership and GM "refused to honor her vehicle's warranties and pay for the repair or replacement cost related to the shifter defect," Satterwhite declined to schedule a repair. *Id*.

The plaintiffs filed this suit on December 2, 2021, on behalf of the following class:

> All persons or entities in the state of California who bought or leased a 2016-2019 Chevrolet Malibu, 2016-2019 Chevrolet Volt, 2018-2019 Chevrolet Traverse, or 2019 Chevrolet Blazer.

Dkt. No. 1 ¶ 62. They alleged seven causes of action against GM, including violations of the MMWA, Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and Song-Beverly Act, breaches of express warranty and of the implied warranty of merchantability, and unjust enrichment. *See generally* Dkt. No. 1.

I denied GM's first motion to dismiss on nearly all the claims, allowing them to proceed as pleaded. *See* First MTD Order at 1-2. I did, however, dismiss the MMWA claim because there were only two named plaintiffs rather than the 100 required by statute. *Id*. at 1. I also dismissed Satterwhite's breach of express warranty and Song-Beverly Act claims with leave to amend, finding that the complaint did not allege that she sought repeated repairs of the defect. *Id*. at 1-2.

The plaintiffs filed their FAC on May 20, 2022, which GM moved to dismiss about two weeks later. Dkt. Nos. 44, 45. Pursuant to Civil Local Rule 7-1(b), this motion is appropriate for disposition without oral argument.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

4

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts her allegations as true and draws all reasonable inferences in her favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## DISCUSSION

I considered most of GM's arguments on its first motion to dismiss, when I allowed the majority of the plaintiffs' claims to proceed as pleaded. The FAC is nearly identical to the plaintiffs' initial complaint. The only difference is two new paragraphs.

This motion turns on three relatively narrow issues: (1) whether the FAC names 100 plaintiffs, as required for the MMWA claim; (2) whether it sufficiently alleges that Satterwhite sought repeated repairs of her vehicle, as required for her breach of express warranty and Song-Beverly Act claims; and (3) whether the plaintiffs provided GM sufficient notice of the shifter defect.

### I.    MMWA CLAIM

The first question is easily answered. A consumer cannot bring a class action suit under the MMWA if the number of named plaintiffs is less than 100. *See* 15 U.S.C. § 2310(d)(3). Like the complaint, the FAC only names two plaintiffs: Spindler and Satterwhite. The plaintiffs concede, without waiving any appellate rights, that they "did not amend to address this issue and so that claim is dismissed." Oppo. [Dkt. No. 51] 1 n.1.

The motion to dismiss is GRANTED with respect to the MMWA claim.

### II.    SATTERWHITE'S CLAIMS

GM again argues the Satterwhite's breach of express warranty claim fails under the essential purpose doctrine because she does not allege repeated unsuccessful repair attempts. Mot. to Dismiss (MTD") [Dkt. No. 45-1] 4:20-5:16. "The essential purpose doctrine . . . permits a buyer to seek all remedies permitted by statute for breach of contract, notwithstanding any contractual limitations as to the buyer's remedies." *Tabak v. Apple, Inc.*, No. 19-CV-02455-JST, 2020 WL 9066153, at *14 (N.D. Cal. Jan. 30, 2020). The remedy in the NVLW is the repair or

1  replacement of parts. *See* FAC ¶ 35. The Ninth Circuit has held that "a repair or replace remedy
2  fails of its essential purpose only if repeated repair attempts are unsuccessful within a reasonable
3  time." *Philippine Nat. Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984); *see also In re*
4  *MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 957 (N.D. Cal. 2018) (noting that "the
5  seller must be given an opportunity to repair and replace the product" before a repair and replace
6  is considered to have failed its essential purpose) (citation omitted).

7      As first pleaded, the complaint did not allege repeated attempts to fix the shifter defect in
8  Satterwhite's vehicle. *See* First MTD Order at 12:1-9. Now the FAC alleges: (1) that Satterwhite
9  had her vehicle serviced for the shifter defect in October 2021 and (2) that she called the same
10  dealership on May 18, 2022, to request another service appointment for the shifter defect. FAC ¶¶
11  57, 62. It further alleges that when Satterwhite called the dealership, she was told that before it
12  would even inspect her vehicle, she would need to pay for a diagnostic check—along with the cost
13  of any needed repairs. *Id.* ¶ 62. Because the dealership and GM "refused to honor her vehicle's
14  warranties and pay for the repair or replacement cost related to the shifter defect," Satterwhite did
15  not schedule the appointment. *Id.*

16      GM contends that "[c]alling to schedule a repair appointment and then 'declining to
17  schedule' an appointment hardly constitutes a 'repair attempt.'" MTD at 5:11-12. But GM does
18  not cite any authority expressly stating this, and the case law it does cite does not foreclose the
19  possibility. Rather, the cases only require that a defendant be "presented with an opportunity" to
20  repair the defect. *See, e.g., In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 783-84 (N.D.
21  Cal. 2017) (dismissing claim because the plaintiffs did not allege that the defendant "failed to
22  provide a replacement for a defective drive still under warranty *after being presented with an*
23  *opportunity to do so*") (emphasis added); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d
24  936, 970 (approving of the defendant's argument that plaintiffs' claims must be dismissed because
25  the defendant "was never given the opportunity to repair, replace, or adjust" the vehicle system at
26  issue); *Clark v. Am. Honda Motor Co., Inc.*, No. CV-20-03147, 2021 WL 4260232, at *3 (C.D.
27  Cal. Sept. 14, 2021) ("there must be more than one repair presentation before a limited warranty
28  can be said to fail of [its] essential purpose").

The FAC sufficiently alleges this. Satterwhite called the dealership, informed it of the shifter defect, and requested a repair appointment. FAC ¶ 62. She presented the dealership (and GM) an opportunity to repair the defect at issue, and only decided to decline to schedule an appointment after the dealership required her to pay $175 for a diagnostic check. *See id*. She sufficiently alleged, at least for pleading purposes, repeated repair attempts as required for her express breach of contract claim. As it relates to this claim, the motion to dismiss is DENIED.[2]

The same allegations save Satterwhite's Song-Beverly Act claim. A plaintiff asserting such a claim must show in part that the "manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts." *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1101 (2001). "To constitute a 'reasonable number of repair attempts,' a plaintiff must present the vehicle to the manufacturer or seller more than once, complaining of the same defect each time." *Treuhaft v. Mercedes-Benz USA, LLC*, No. 20-CV-11155, 2021 WL 2864877, at *3 (C.D. Cal. July 6, 2021) (collecting cases).

Again, by calling the dealership, telling it about the shifter defect, and attempting to schedule another repair, Satterwhite presented the vehicle to the dealership and GM more than once, complaining of the same defect underlying the October 2021 repair. *See* FAC ¶¶ 57, 62. This satisfies the pleading requirements for a Song-Beverly Act claim. GM's motion to dismiss this claim is also DENIED.[3]

---

[2] GM's argument that Spindler also did not allege that the defect reoccurred in his vehicle after the second repair attempt is belied by the FAC. *See* MTD at 5:17-24. Spindler alleges that a day after the second repair attempt, his check engine light came on, "indicating a failure with the repairs." *See* FAC ¶¶ 48-49. This sufficiently alleges that Spindler's warranty failed its essential purpose.

[3] GM makes two other arguments against the plaintiffs' Song-Beverly Act claims: that Satterwhite's fails because she did not allege that the shifter defect manifested during the implied warranty period and that Spindler's fails because he purchased a used vehicle with only the balance of the original new car warranty. MTD at 11:9-12:27. I already addressed the first point, finding that the plaintiffs were not bound by the statute's durational limits because they sufficiently alleged that the defect was latent. First MTD Order at 19:21-25. I also addressed the second—and GM's new arguments are not convincing. *See id*. at 20:1-10. First, the Central District of California case it relies on, *Fish v. Tesla*, No. CV-21-060, 2022 WL 1552137, at *10-11 (C.D. Cal. May 12, 2022), does not speak to the reason I first allowed the claim to proceed: the plaintiffs have plausibly alleged that GM stepped into the role of a retailer and is subject to the retailer's statutory obligations. *See* First MTD at 19:7-17, 20:1-10. This is supported by *Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 340 (2019) and *Rodriguez v. FCA US, LLC*, 77 Cal. App. 5th 209, 218 (2022). The FAC adequately alleges that Spindler's vehicle was covered

7

### III. NOTICE

GM renews its argument that the plaintiffs' express and implied warranty claims fail because they do not adequately allege that they provided GM with pre-suit notice as required by California law. MTD at 6:24-8:18; *see also* Cal. Com. Code § 2607(3)(A) (stating that a buyer "must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of the breach or be barred from any remedy").

My previous Order focused on two issues which remain relevant: (1) whether a letter that the plaintiffs sent GM two weeks before filing their initial complaint constituted adequate notice and (2) whether the plaintiffs adequately alleged that they had provided notice in another way. First MTD Order at 9:1-10:7. I held that the letter did not suffice because it was not mentioned in the complaint, noting that this "could easily be resolved through amendment." *Id*. at 9:16-19. I also held that the plaintiffs had alleged that they provided GM and its agents notice when they presented their vehicles for repairs which, absent any counterargument from GM, "could serve as sufficient pre-suit notice." *Id*. at 9:20-10:1. But GM now argues that presenting a vehicle for repair does not satisfy the pre-suit notice requirement. MTD at 8:3-16.

I need not decide this issue, as the letter provided GM sufficient pre-suit notice of the plaintiffs' claims. *See* Dkt. No. 28-6. It was sent before the plaintiffs first filed suit and within a reasonable time after they allegedly discovered the breach (which, according to the FAC, occurred when GM failed to fix the shifter defect when the plaintiffs sought repairs in October 2021).[4] *See id*., FAC ¶¶ 47, 57. GM's argument that the letter does not suffice because the plaintiffs sent it to an address different from what was listed in the warranty, raised for the first time in the reply, amounts to an unpersuasive technicality. *See* Reply [Dkt. No. 54] 4:17-18.

I will take judicial notice of the letter as the plaintiffs request. *See* Oppo. at 5:24-6:18.

---

by three warranties. FAC ¶ 44. Accepting the plaintiffs' allegations as true and drawing all reasonable inferences in their favor, they have plausibly pleaded that the warranties applied. Although details about those warranties—including who issued them and what they entailed—may prove dispositive of the plaintiffs' claims at a later stage of litigation, as pleaded, Spindler's Song-Beverly Act claim may proceed.

[4] Further, the November 2021 letter was sent well before the plaintiffs filed the FAC in May 2022.

8

Federal Rule of Evidence 201 allows for the judicial notice of adjudicative facts that are not subject to reasonable dispute, either because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." GM does not dispute the accuracy of the letter or its contents, nor otherwise deny the letter's authenticity. Notice is therefore appropriate. The alternative is to dismiss the claims for lack of notice, grant leave to amend, and allow the plaintiffs to file a Second Amended Complaint, likely resulting in a third motion to dismiss. This would unnecessarily delay the case; the parties have now had two opportunities to refine the claims, all but one of which will have twice survived dismissal.

Having taken notice of the letter that the plaintiffs sent GM on November 15, 2021, I find that the plaintiffs provided sufficient pre-suit notice as required by law.

### IV.  GM'S KNOWLEDGE AND DUTY TO DISCLOSE

GM makes another argument that, although not compelling, requires more than a footnote to address. It now contends that the plaintiffs' omission-based claims fail because they did not adequately allege that GM knew about the shifter defect before they purchased their vehicles or that it had a duty to disclose. MTD at 9:4-10:20.

The FAC clearly alleges that GM knew about the defect, as indicated by the technical service bulletins ("TSBs") that it issued dealers, the complaints customers made online, and the complaints made to the NHTSA, which the plaintiffs contend GM was obligated to monitor. *See* FAC ¶¶ 22, 25-26, 28-32. GM's argument that the TSBs do not suffice is not persuasive. The cases it cites either come from out-of-circuit courts or held that TSBs do not show pre-sale knowledge if they do not concern the specific defect at issue. *See* MTD at 9:5-20; *see also Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (holding that TSBs did not establish GM's knowledge of the defect because they only addressed "the general problem of excessive oil consumption" and did "not mention the alleged specific defect"). But the plaintiffs cite TSBs that reference the "shift to park message" that appears when the vehicle is in park and turned off. *See* FAC, Exs. A-D. They also indicate that the underlying issue originates with the "transmission control (shifter) assembly." *See id.*, Exs. C-D. Like the

TSBs in *MacDonald v. Ford Motor Company*, 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014), the series of TSBs here indicate that GM "was generally aware of problems" with the shifter assembly and that "despite this awareness it continued to sell vehicles containing the defective part." Taken with the other allegations (i.e., the consumer complaints), the plaintiffs have plausibly shown that GM knew about the shifter defect at the time they purchased their vehicles.

The plaintiffs have also sufficiently alleged that GM had a duty to disclose the defect. To be actionable under California consumer protection laws, an omission "must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (citation omitted). There are two situations in which such a duty arises, one of which is when the undisclosed information "cause[s] an unreasonable safety hazard." *Johnson v. Glock, Inc.*, No. 20-CV-08807-WHO, 2021 WL 6804234, at *5 (N.D. Cal. Sept. 22, 2021) (citing *Hodsdon*, 891 F.3d at 861-62). "Under this theory, a plaintiff must adequately plead (1) a defect, (2) a safety hazard, (3) a causal connection between the defect and the hazard, and (4) the defendant's knowledge of the defect at the time of sale." *Id*.

The FAC does this. The plaintiffs allege a defect, and plausibly allege that this defect poses a safety hazard. *See* FAC ¶ 19. As I previously held, this inference is reasonable. *See* First MTD Order at 13:11-24. ("The plaintiffs allege that the shifter defect prevents drivers from turning off their vehicles as intended. An alleged defect that keeps a car running longer than it is supposed to plausibly poses a safety risk."). The FAC asserts a causal connection between the shifter defect and this hazard. FAC ¶ 19. And, as I just explained, the plaintiffs have adequately alleged that GM knew about the defect when they purchased their vehicles. Accordingly, they have sufficiently shown that GM had a duty to disclose the defect. This does not bar the fraud-based claims, which again may proceed as pleaded.

10

**CONCLUSION**

GM's motion to dismiss is GRANTED with respect to the MMWA claim. It is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: July 21, 2022


William H. Orrick
United States District Judge